# Rogers *et al. v.* Torbut *et al.*

*Bill in Equity to Enjoin Foreclosure of Mortgage and to obtain relief on account of usury.*

1. *Usury; bill for relief from mortgage on account of; practice.*—Where a complainant files a bill to obtain relief from a mortgage on account of usury, he must either bring into court the money legally due, or submit himself to the court on an offer to pay, so that the court may, without more, compel him to do equity as a condition for granting relief, whereupon the court may decree a foreclosure without the filing of a cross bill.

2. *Same; practice; admission by defendant's solicitor.*—Where, in such a case, a decree of foreclosure is authorized on the original bill, without the filing of a cross bill, the decree will not be disturbed, because on the case made by defendant turning his answer into a cross bill, which complainants answered, the solicitors admitted that one of the complainants was a married woman at the time the execution of the mortgage conveying her statutory estate, there being nothing in the answer authorizing the introduction of such proof, or the making of such defense.

3. *Misjoinder of parties complainant; when feme covert cannot claim personal relief.*—To a bill seeking relief from a mortgage on account of usury, parties complainant should not be joined unless they are entitled to common relief. And though each and all may be entitled to make the defense of usury, yet where the rights of one of the complainants is that of a *feme covert* claiming that the property is her statutory estate, and not subject to the mortgage made by her for the security of another's debt, such right is personal to her, and she cannot claim this personal relief under a bill filed by her conjointly with her husband and another male complainant.

4. *Decree rendered in vacation; repeal and amendments of certain acts in refer-*

58  523
99  178

58  523
100  616
101  368
101  534

58  523
130  152
130  509

*ence thereto ; when an act repealed or revived.*—1. The provision of the Revised Code (§ 3470), which authorized the Chancellor to render decrees in vacation, within six months, was repealed by the amendatory act of December 8th, 1873, which authorizes decrees in vacation, within ninety days, by consent. This latter act was repealed by "an act to repeal an act to amend § 3470 of the Revised Code of Alabama," approved Feb. 4th, 1876, which provided in a separate section that Chancellors might, "in difficult cases, render decrees in vacation, within six months after the submission of causes." 2. Under the Constitution of 1868 (Art. 4, § 2), section 3470 of the Revised Code was *ipso facto* repealed by the amendatory act of 1873, although it contained no express words of repeal. 3. The repeal of the amendatory act, by the act of Feb. 4th, 1876, did not revive or restore that section, the Constitution of 1875, (Art. 10, § 2), forbidding any law to be 'revived, amended,' or the provisions thereof extended or conferred, by reference to its title only. 4. The title of the act of Feb. 4th, 1876, "To repeal an act to amend § 3470 of the Revised Code of Alabama," does not express any intention to revive that section, and is so restricted in its title that it it does not authorize the incorporation, in the one subject to which it relates, of a provision reviving that section, or substantially re-enacting it in terms; and hence its second section is unconstitutional. 5. From the passage of the act of Feb. 4th, 1876, up to the time when the Code of 1876 went into effect, there was no statute authorizing the Chancellor to render decrees in vacation without the consent of the parties. 6. What effect the incorporation of the second section of the act of Feb. 4th, 1876, into the Code of 1876, will have upon cases arising since said Code went into effect, is not decided.

APPEAL from the Chancery Court of Lee.
Heard before the Hon. N. S. GRAHAM.

The case may be fully comprehended from the opinion.

G. D. & G. W. HOOPER, for appellants.

ABERCROMBIE & GRAHAM, and J. J. ABERCROMBIE, *contra.*

No briefs came to Reporter.

STONE, J.—The present record is in a very embarrassing condition. An original bill was filed by John C. W. Rogers, Anthony F. Rogers and Martha A. Rogers—the last a married woman, suing by Anthony F., her husband and next friend. The bill charges usury in excessive form, and seeks to enjoin the sale of the mortgaged property under the power of sale contained in the mortgage, on account of the alleged usury. It claims no other relief.

The bill contains this clause : "Your orators and oratrix hereby offer to pay to the said E. A. Torbut such sum as, after stating said account, shall appear to have been received by the said John C. W. Rogers from said James M. Torbut, together with the legal interest thereon." The bill charges that the mortgage under which Torbut was proceeding to sell, embraces "the following property of complainants, Anthony F. and Martha A. Rogers, to-wit: the north

VOL. LVIII.

[Rogers et al. v. Torbut et al.]

half of section," &c.   In the prayer for relief is the follow-
ing, among other clauses : "Complainants further pray that,
on final hearing, said E. A. Torbut be restrained from pro-
ceeding to collect, by sale of said mortgaged premises, or
foreclosure of said mortgage, any sum, except such as by
said account may be fixed and ascertained to be due him
from said complainants."   There is no other averment in the
original bill which tends to show that Mrs. Martha A. Rogers
had any interest in, or claim to the property in controversy.
Nothing said about the nature of her claim, whether a sepa-
rate estate or not, and if separate, whether statutory or equi-
table.

The answer of the defendants admits the usury charged;
states the note and mortgage are the property of E. A. Tor-
but, and that James M. Torbut has no interest in them;
that the said E. A. Torbut has proposed to complainants,
through his attorney, to accept in full payment the amount
admitted in the bill to be due ; and he is now willing to ac-
cept the same in full satisfaction ; but that the "complainants
declined and refused to make good their offer contained in
their bill to pay the principal and legal interest, and still re-
fuse to pay principal and legal interest."

1. It will be observed that up to the present stage of this
case—that is, up to the formation of the issue, if issue it may
be called—the record presents but a single question: that of
the right of complainants to be relieved against the excess
of interest charged above the legal rate.   That question is
fairly presented, and the bill sufficiently offers to do equity,
by proposing to pay the amount of money borrowed, with
lawful interest thereon.   Without this offer, the complain-
ants would have had no standing in court, and their bill
would have been demurrable.—*Nelson v. Dunn*, 15 Ala. 501 ;
*Tucker v. Holley*, 20 Ala. 426 ; *Crews v. Threadgill*, 35 Ala.
334, 342 ; *Martin v. Martin*, 35 Ala. 560 ; *Miller v. Bates*, Ib.
580 ; *Cain v. Gimon*, 36 Ala. 168 ; 1 Eq. Ju. § 301 ; *Fanning
v. Dunham*, 5 Johns. Ch. 122, 142-3 ; *McGuire v. Van Pelt*,
55 Alabama, 344   The rule in such case is, that a com-
plainant asking such relief, must either bring the money
borrowed, and interest, into court, or he must, by his offer,
submit himself to the authority and jurisdiction of the court,
so that the court, without more, may compel him to do equity,
as a condition upon which the relief prayed will be granted.
This is the spirit, this the sense of the rule.   In *Branch
Bank of Mobile v. Strother*, 15 Ala. 51, 60, it was said, " The
reason why it is necessary, in a bill seeking relief against
usury, to offer to pay the amount actually due, is, that the
court will not interfere, unless the complainant will either

pay, or submit that a decree be rendered against him for the principal and lawful interest; and the court has not the power to render a decree against him on his own bill, unless he makes this offer by the bill."—See, also, *Fanning v. Dunham, supra.* Under these authorities, it is clear that, on the bill and answer, without a cross bill, the court was authorized to ascertain by its decree the amount due Torbut, and, if not paid, to order a sale of the lands conveyed. Hence, no cross bill was necessary to support a decree ordering a sale of the lands.

2. The defendants, however, made their answer a cross bill, prayed process against defendants (complainants in the original bill), and prayed for a decree of foreclosure. The answer of Mrs. Rogers to the cross bill, differs from the averments of the original bill, only in the following particulars: She avers that at the time she executed the note and mortgage, she was a married woman, wife of Anthony F. Rogers; that no consideration moved to her for executing said papers, "and that she then owned a life estate in all the property described in said mortgage (with the exception of that described as being in the city of Opelika); said life estate was created by the will of Daniel Rogers, deceased." Still, no averments in any of the pleadings that the lands were of the separate estate of Mrs. Rogers. There is an agreement in the record, signed by the solicitors of both parties, with a copy of the will of Daniel Rogers attached and made part of the agreement, which admits that Mrs. Rogers was a married woman when she signed the note and mortgage; that she owned a life estate in the lands, and, construed in connection with the will, shows that the same was her statutory separate estate. Such is the proper construction of the will of Daniel Rogers, for it contains no words excluding the husband's marital rights.—See 2 Brick. Dig. 81-2, §§ 165, 169, 172, 173, 175, 178, 179, 184, 185, 186. We have, then, a case in which, according to the pleadings, the decree is right. According to the agreed facts, it is wrong. See *Bibb v. Pope*, 43 Ala. 190; *Northington v. Faber*, 52 Ala. 45; *Peeples v. Stolla*, 57 Ala. 53. If this case were at all dependent on the testimony, we would feel it our duty to reverse the decree of the Chancellor. The testimony fails to support the case made by the pleadings. The original bill and answer make a complete case for the relief which was granted, and all else must be disregarded. The Chancellor did not err in the substance or principles of his decree. This renders it immaterial whether there was or was not a proper issue formed on the cross bill.

3. There is a difficulty in this case, even if the original

bill were amended, so as to show Mrs. Rogers' title to the lands, and that the life interest is her statutory separate estate. She and Anthony F. Rogers, her husband, and John C. W. Rogers, are joint complainants, and, unless they are entitled to common relief, they should not have been joined. Each and all are entitled to make the defense of usury , but the rights of Mrs. Rogers as a *feme covert,* and to claim that the property is her statutory separate estate. and not subject to the mortgage made by her for the security of another's debts, is personal to her. She can not claim this personal relief under a bill-filed by her conjointly with the male complainants in this cause.—*Bibb v. Pope,* 43 Ala. 90 ; *Northington v. Faber,* 52 Ala. 45 ; *Peeples v. Stolla, supra ;* 1 Brick. Dig. 750, §§ 1034–5–6.

4. The decree of the Chancellor was rendered in this cause in vacation, without any consent therefor entered into by the parties or their solicitors. It is here contended that this decree is a nullity, because it was rendered in vacation without agreement. And this depends on another position taken for appellant, namely : that the statute under which the Chancellor so rendered his decree was not constitutionally enacted. As the statute on this subject stood when the Revised Code was adopted in 1867, the provision was : "The Chancellor must, when practicable, render his decrees in writing, during the session of the court at which the cause is heard ; he may, however, in difficult cases, render a decree in vacation within six months after the hearing."—Code of 1867, § 3470.

On the 8th of December, 1873, the bill was enacted "To amend section 3470 of the Revised Code of Alabama." By said enactment, the section named was amended so as to read as follows: "The Chancellor must, in all cases, render his decrees in writing during the session of the court at which the cause is heard. He may, however, by written consent of the counsel in the cause, render a decree in vacation. within ninety days after the hearing."—Pamph. Acts, 58. This repealed section 3470 of the Revised Code, under the Constitution of 1868, art. 4, sec. 2.

On the 4th of February, 1876—Pamph. Acts 184—the legislature enacted the statute " To repeal an act entitled an act to amend section three thousand four hundred and seventy of the Revised Code of Alabama, approved December 8, 1873." Such is its caption. By the first section it recited and repealed the amendatory statute which we have ·copied above. The whole amendatory act of Dec. 8, 1873, was copied in *extenso* in the repealing act of February 4, 1876, with the superceded words, " be and the same is hereby re-

pealed." The act of Dec. 8, 1873, had repealed section 3470 of the Revised Code.—See Constitution of 1868, Art. 4, § 2. And the first section of the act of Feb. 4, 1876, repealed the act of Dec. 8, 1873. This, under the common law rule, would revive the statute first repealed.—Sedg. Stat. and Const. 116. But such is not the rule under our present constitution. It provides, Art. 4, sec. 2, that, "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."—See *Dane v. McArthur*, 57 Ala. 448. The legislature, in the act of Feb. 4th, 1876, doubtless attempted to conform to this requirement of the Constitution, for they added a section, number 2, which is substantially the same as section 3470 of the Revised Code, and which is now section 3896 of the Code of 1876. If that section was constitutionally enacted, then the Chancellor was authorized, without any consent of counsel therefor, to render his decree in vacation, within six months after the submission. Was the second section constitutionally enacted? The Constitution ordains, art. 4, sec. 2—that "each law shall contain but one subject, which shall be clearly expressed in the title," with certain exceptions not necessary to be noticed here. The caption of the act of February 4th, 1876, not only does not express any intention to revive section 3470 of the Revised Code, but it makes no mention whatever of that subject. There is nothing in the caption which authorizes us to declare this subject is expressed or embraced within it; and the result is, that section 2 of the act is unconstitutional, because not expressed in the caption.—*Lowndes County v. Hunter*, 49 Ala. 507.

A caption might have been chosen which would have included this section, and the residue of the statute as one subject; but it was not done. We need not inquire what effect the incorporation of the second section of the act of 1876, in the Code of that year, will have on its operation after that Code became operative—December 9th, 1877. The decree in the present case was rendered before that time.

The decree being rendered in vacation, without the consent of counsel, must be reversed, and the cause remanded.